COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton and Senior Judge Hodges
Argued at Norfolk, Virginia

PARADOX CORPORATION, T/A THE EDGE

v.    Record No. 2333-94-1                    MEMORANDUM OPINION[*]
                                                   PER CURIAM
VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD          MAY 16, 1995


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   A. Bonwill Shockley, Judge

            Kevin E. Martin-Gayle (Moody E. Stallings,
            Jr.; John W. Richardson; Stallings &
            Richardson, on briefs), for appellant.

            J. Patrick Griffin, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General; Michael K. Jackson, Senior Assistant
            Attorney General, on brief), for appellee.


     Paradox Corporation, t/a The Edge (The Edge) appeals from a circuit court affirmance of a decision of the Virginia Alcoholic Beverage Control Board (the Board) to revoke The Edge's ABC licenses.  The Edge presents the following nine questions on appeal:

     1.    Did the trial court err in failing to reverse the Board on the basis that the Board's method of revoking the appellant violated Due Process of law?

     2.    Did the trial court err in failing to reverse the Board on the basis that the Board was "tainted" by the March 29, 1994, meeting?

     3.    Did the trial court err in refusing to continue the case, in refusing to order Board Member Giordano to appear and testify, and in refusing to order the City Attorneys to appear and testify?

     4.    Did the trial court err in failing to reverse the Board on the basis that the Board acted arbitrarily and

_____

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

capriciously?

5.     Did the trial court err in failing to reverse the Board on the basis that the Board abused its discretion by issuing revocations without any justification whatsoever for adopting the harshest penalty possible?

6.     Did the trial court err in failing to reverse the Board on the basis that the Board erred in issuing revocations despite the presence of mitigating evidence?

7.     Did the trial court err in failing to reverse the Board on the basis that the Board abused its discretion in modifying the decision of the hearing officer by issuing revocations?

8.     Did the trial court err in failing to reverse the Board on the basis that the Board erred in issuing revocations where the ends/goals of the Board are not furthered by such a harsh result, while The Edge is put out of business?

9.     Did the trial court err in granting the Board's Motion to Strike?

Finding no error, we affirm the circuit court's decision.

## Issues 1 and 2

To show a due process violation, The Edge must overcome "the presumption of official regularity" which is bestowed upon agency decisions. Code § 9-6.14:17. The Edge's "taint" argument is deficient.

First, the membership of the Board changed on February 21, 1994. The "Old" Board, by notice dated February 10, 1994, proposed to revoke The Edge's licenses. The "New" Board acted on the proposal. This sequence of events demonstrates that the "Old" Board questioned the penalty decided upon by the hearing officer, and it set into motion the events leading up to the

2

"New" Board's revocation of the licenses.  Such a scenario hardly supports The Edge's theory that the Board and Virginia Beach officials conspired to shut down The Edge.

Second, a review of the transcript of the November 18, 1994 hearing reveals that all nine witnesses, with minor differences, agreed that the main purpose of the meeting was to address rowdiness and drinking problems in the oceanfront area by the coordinated efforts of Virginia Beach police and ABC enforcement personnel.  While some witnesses testified that "The Block" was mentioned, it was mentioned in the context of being part of the larger oceanfront area.  No witness recalled The Edge being mentioned at the meeting.

There is no proof that The Edge, either overtly or covertly, was the topic of conversation at the March 29 meeting. Accordingly, nothing happened at the meeting which would necessitate an opportunity by The Edge to respond.  As such, there was no due process violation.

Finally, The Edge's reliance on <u>Virginia Board of Medicine v. Fetta</u>, 244 Va. 276, 421 S.E.2d 410 (1992), is misplaced. There, four Board members, who later ruled on Fetta's case, sat in on the hearing before the hearing officer.  <u>Id.</u> at 277, 421 S.E.2d at 411.  Here, the November 18 meeting, of which there is no evidence that The Edge was even mentioned, is no parallel to the hearing condemned in <u>Fetta</u>.

<u>Issue 3</u>

3

First, The Edge argues that the circuit court erred in not granting a continuance so that it could serve Board member Giordano with a subpoena. Whether to grant or deny a continuance lies in the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. See McNew v. Dunn, 233 Va. 11, 15, 353 S.E.2d 713, 716 (1987). The Edge successfully served eleven other potential witnesses. The court quashed the subpoena as to two of these witnesses, but the other nine were in court and prepared to testify on November 18. Under these circumstances, we cannot conclude that the court abused its discretion in denying the motion for a continuance.

Second, The Edge argues that the court should have compelled Giordano to appear and testify. Giordano was not served with a subpoena. The Edge cites no authority that would enable the court, under those circumstances, to compel her attendance and testimony.

Third, The Edge argues that the court erred in ruling that City Attorney Lilley and Assistant City Attorney Byman need not testify. In their "Motion to Quash Subpoenas to Testify," Lilley and Byman asserted that they "were present at the meeting . . . solely in their capacity as attorneys in order to provide legal advice to City Council and/or City officials." The trial court accepted this assertion. The transcript of the November 18 hearing contains nothing that contradicts this assertion. There is no suggestion in this transcript that Lilley or Byman were

4

active participants in the meeting or that their roles transgressed their status as legal advisors to the city councilmen or city officials.

## Issues 4 through 7

The Board adopted the hearing officer's findings of fact, but disagreed as to the appropriate punishment. The Edge, while conceding that the Board has the authority, in the exercise of its discretion, to revoke The Edge's licenses, nonetheless argues that the Board, under these circumstances, owed some degree of deference to the hearing officer's determination of punishment. There is no support for this argument. Code § 4.1-103(13) specifically grants "The Board" the power to "[g]rant, suspend, and revoke licenses . . . ." See also Code § 4.1-225. No condition is placed on this power.

Furthermore, a close review of the record reveals that Chicho's, a nearby establishment, was not similarly situated to The Edge, and, as such, the Board did not act arbitrarily and capriciously in arriving at a less severe punishment for Chicho's. Of particular note are the findings that, as to Chicho's, the violations involved actions of employees and/or officers which were apparently unknown to the owners. In contrast, The Edge's owners were directly involved in its violations.

## Issue 8

The Edge argues that the Board erred in revoking its

5

licenses because the Board's "goal" of ensuring the public safety is not furthered by the revocation.  This public policy argument is without merit.  As noted above, Code §§ 4.1-103(13) and 4.1-225 specifically grant the Board the authority to revoke licenses for violations such as those committed by The Edge.

Issue 9

The Edge incorrectly argues that the trial judge erred in granting the motion to strike.  Rule 1:11 and Code § 8.01-378, cited by The Edge, specifically apply to jury trials.  Rather, the proper posture for a trial court to assume in considering a motion to strike is to "view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the plaintiff.  Any reasonable doubt as to whether the plaintiff has produced sufficient evidence of the wrong alleged must be resolved in the plaintiff's favor and the motion to strike denied."  Izadpanah v. Boeing Joint Venture, 243 Va. 81, 83, 412 S.E.2d 708, 709 (1992).

The purpose of the November 18 hearing was to demonstrate that the Board was tainted when it considered The Edge's licensing status, and, correspondingly, denied The Edge due process guarantees.  As noted earlier, nothing produced at the hearing supported this claim.  Accordingly, the circuit court did not err in granting the motion to strike.

Affirmed.